UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO
EASTERN DIVISION

| | |
|---|---|
| _____ )<br>UNITED STATES OF AMERICA,      )<br>the STATE OF IDAHO, and        )<br>the SHOSHONE-BANNOCK TRIBES,  )<br>                      )<br>          Plaintiffs,    )<br>                      )<br>        v.          )<br>                      )<br>P4 PRODUCTION, L.L.C.,        )<br>                      )<br>          Defendant.   )<br>                      )<br>_____ ) | Civil Action No. 4:21-cv-00092-BLW |

**REMEDIAL DESIGN/REMEDIAL ACTION
CONSENT DECREE**

## TABLE OF CONTENTS

I. BACKGROUND ......................................................................................................... 1
II. JURISDICTION ........................................................................................................ 2
III. PARTIES BOUND ..................................................................................................... 3
IV. DEFINITIONS ........................................................................................................... 3
V. GENERAL PROVISIONS ......................................................................................... 7
VI. PERFORMANCE OF THE WORK ........................................................................... 8
VII. REMEDY REVIEW ................................................................................................ 11
VIII. PROPERTY REQUIREMENTS .............................................................................. 12
IX. FINANCIAL ASSURANCE .................................................................................... 14
X. PAYMENTS FOR RESPONSE COSTS .................................................................. 17
XI. INDEMNIFICATION AND INSURANCE ............................................................. 21
XII. FORCE MAJEURE ................................................................................................. 22
XIII. DISPUTE RESOLUTION ....................................................................................... 24
XIV. STIPULATED PENALTIES .................................................................................... 26
XV. COVENANTS BY PLAINTIFFS ............................................................................ 29
XVI. COVENANTS BY SETTLING DEFENDANT ....................................................... 31
XVII. EFFECT OF SETTLEMENT; CONTRIBUTION .................................................. 33
XVIII. ACCESS TO INFORMATION ............................................................................... 34
XIX. RETENTION OF RECORDS ................................................................................. 35
XX. NOTICES AND SUBMISSIONS ........................................................................... 36
XXI. RETENTION OF JURISDICTION ......................................................................... 37
XXII. APPENDICES ........................................................................................................ 38
XXIII. MODIFICATION ................................................................................................... 38
XXIV. LODGING AND PUBLIC COMMENT ................................................................. 38
XXV. SIGNATORIES/SERVICE ..................................................................................... 38
XXVI. FINAL JUDGMENT .............................................................................................. 39

# I.    BACKGROUND

A.    The United States of America, on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a Complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606 and 9607.

B.    The United States in its complaint seeks, *inter alia*: (1) reimbursement of costs incurred by EPA and the Department of Justice ("DOJ") for response actions at the Ballard Mine Superfund Site in Caribou County, Idaho ("Site"), together with accrued interest; and (2) performance of response actions by Defendant P4 Production, L.L.C. ("Settling Defendant") at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 ("NCP").

C.    In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the State of Idaho ("State") on May 13, 2019, of negotiations with Settling Defendant regarding the implementation of the remedial design and remedial action ("RD/RA") for the Site, and EPA has provided the State with an opportunity to participate in such negotiations and be a party to this Consent Decree ("CD").

D.    The State has joined with the United States in the Complaint against Settling Defendant in this Court alleging that Settling Defendant is liable to the State under Section 107 of CERCLA, 42 U.S.C. § 9607 and state law.

E.    In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the United States Fish and Wildlife Service, Bureau of Land Management, United States Forest Service, and the Shoshone-Bannock Tribes of Fort Hall, Idaho ("the Tribes") in May 2019, of negotiations with Settling Defendant regarding the release of hazardous substances that may have resulted in injury to the natural resources under federal and tribal trusteeship and encouraged the trustees to participate in the negotiation of this CD.

F.    The Tribes have also filed a complaint against Settling Defendant in this Court alleging that the Settling Defendant is liable to the Tribes under Section 107 of CERCLA, 42 U.S.C. § 9607.

G.    Settling Defendant does not admit any liability to Plaintiffs arising out of the transactions or occurrences alleged in the complaints, nor does it acknowledge that the release or threatened release of hazardous substances at or from the Site constitutes an imminent and substantial endangerment to the public health or welfare or the environment.

H.    In response to a release or a substantial threat of a release of hazardous substances at or from the Site, and pursuant to an Administrative Settlement Agreement and Order on Consent/Consent Order for Performance of Remedial Investigation and Feasibility Study ("RI/FS") at the Enoch, Henry, and Ballard Mine Sites, Settling Defendant commenced on December 1, 2009, an RI/FS for the Site pursuant to 40 C.F.R. § 300.430.

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

I.      Settling Defendant completed the Remedial Investigation ("RI") Report on November 3, 2014, and completed a Feasibility Study ("FS") Report on April 6, 2017.

J.      Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the FS and of the proposed plan for remedial action on March 29, 2018, in the Idaho State Journal, the Caribou County Sun, and the Sho-Ban News, three major local newspapers of general circulation. EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action. A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which the Regional Administrator, EPA Region 10, based the selection of the response action for the Site.

K.      The decision by EPA on the remedial action to be implemented at the Site is embodied in a final Record of Decision ("ROD"), executed on September 24, 2019, on which the State has given its concurrence. The ROD includes a responsiveness summary to the public comments. Notice of the final plan was published in accordance with Section 117(b) of CERCLA, 42 U.S.C. § 9617(b).

L.      EPA met with members of the Fort Hall Business Council on November 8, 2018 and engaged in Government-to-Government Consultation on the proposed cleanup action for the Site. During the consultation, the Tribes expressed concerns about the impacts of phosphate mining and expressed support for making progress on cleaning up historic phosphate mines in southeastern Idaho. With respect to the Ballard Mine Site, the Tribes raised many questions and concerns and offered recommendations but did not object to the Preferred Alternative, which became the Selected Remedy.

M.      Based on the information presently available to EPA, the State, and the Tribes, Plaintiffs believe that the Work will be properly and promptly conducted by Settling Defendant if conducted in accordance with this CD and its appendices.

N.      Solely for the purposes of Section 113(j) of CERCLA, 42 U.S.C. § 9613(j), the remedy set forth in the ROD and the Work to be performed by Settling Defendant shall constitute a response action taken or ordered by the President for which judicial review shall be limited to the administrative record.

O.      The Parties recognize, and the Court by entering this CD finds, that this CD has been negotiated by the Parties in good faith and implementation of this CD will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this CD is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.      JURISDICTION

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1367, and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b). This Court also

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

has personal jurisdiction over Settling Defendant. Solely for the purposes of this CD and the underlying Complaint, Settling Defendant waives all objections and defenses that it may have to jurisdiction of the Court or to venue in this District. Settling Defendant shall not challenge the terms of this CD or this Court's jurisdiction to enter and enforce this CD.

## III.   PARTIES BOUND

2.      This CD is binding upon the United States, the State, and the Tribes, and upon Settling Defendant and its successors and assigns. Any change in ownership or corporate or other legal status of Settling Defendant, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter Settling Defendant's responsibilities under this CD.

3.      Settling Defendant shall provide a copy of this CD to each contractor hired to perform the Work and to each person representing Settling Defendant with respect to the Site or the Work, and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this CD. Settling Defendant or its contractors shall provide written notice of the CD to all subcontractors hired to perform any portion of the Work. Settling Defendant shall nonetheless be responsible for ensuring that its contractors and subcontractors perform the Work in accordance with the terms of this CD. With regard to the activities undertaken pursuant to this CD, each contractor and subcontractor shall be deemed to be in a contractual relationship with Settling Defendant within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV.   DEFINITIONS

4.      Unless otherwise expressly provided in this CD, terms used in this CD that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this CD or its appendices, the following definitions shall apply solely for purposes of this CD:

"Affected Property" shall mean all real property at the Site and any other real property where EPA determines, at any time, that access, land, water, or other resource use restrictions, and/or Institutional Controls are needed to implement the Remedial Action, including, but not limited to, the property depicted in Appendix C.

"Ballard Mine Site RD/RA Special Account" shall mean the special account, within the EPA Hazardous Substance Superfund, established for the Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3).

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9675.

"Cleanup Levels" shall mean the cleanup levels specified in Section 8.2 of the ROD.

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

3

"Consent Decree" or "CD" shall mean this consent decree and all appendices attached hereto (listed in Section XXII). In the event of conflict between this CD and any appendix, this CD shall control.

"Day" or "day" shall mean a calendar day. In computing any time period under this CD, where the last day would fall on a Saturday, Sunday, or federal, State, or Tribal holiday, the period shall run until the close of business of the next working day.

"DOJ" shall mean the United States Department of Justice and its successor departments, agencies, or instrumentalities.

"Effective Date" shall mean the date upon which the approval of this CD is recorded on the Court's docket.

"EPA" shall mean the United States Environmental Protection Agency and its successor departments, agencies, or instrumentalities.

"EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurs in reviewing or developing deliverables submitted pursuant to this CD, in overseeing implementation of the Work, or otherwise implementing, overseeing, or enforcing this CD, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to ¶ 11 (Emergencies and Releases), ¶ 12 (Community Involvement), ¶ 24 (Access to Financial Assurance), Section VII (Remedy Review), Section VIII (Property Requirements) (including the cost of attorney time and any monies paid to secure or enforce access or land, water, or other resource use restrictions and/or to secure, implement, monitor, maintain, or enforce Institutional Controls including the amount of just compensation), and Section XIII (Dispute Resolution), and all litigation costs. Future Response Costs shall also include all Interim Response Costs, and all Interest on those Past Response Costs Settling Defendant has agreed to pay under this CD that has accrued pursuant to 42 U.S.C. § 9607(a) during the period from August 31, 2019 to the Effective Date, and Agency for Toxic Substances and Disease Registry ("ATSDR") costs regarding the Site.

"FWS" shall mean the United States Fish and Wildlife Service and its successor departments, agencies, or instrumentalities.

"IDEQ" shall mean the Idaho Department of Environmental Quality and its successor departments, agencies, or instrumentalities.

"Institutional Controls" or "ICs" shall mean Proprietary Controls and state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices that: (a) limit land, water, or other resource use to minimize the potential for human exposure to Waste Material at or in connection with the Site; (b) limit land, water, or other resource use to implement, ensure non-interference with, or ensure the protectiveness of the RA; and/or (c) provide information intended to modify or guide human behavior at or in connection with the Site.

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

"Interim Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, (a) paid by the United States in connection with the Site between August 31, 2019 and the Effective Date, or (b) incurred prior to the Effective Date but paid after that date.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year. Rates are available online at https://www.epa.gov/superfund/superfund-interest-rates.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Non-Settling Owner" shall mean any person, other than Settling Defendant, that owns or controls any Affected Property, including Dirt Poor Farms LLC, Tucker Torgesen Farms Inc, and Clair L. Holmgren LLC. The clause "Non-Settling Owner's Affected Property" means Affected Property owned or controlled by Non-Settling Owner.

"Operation and Maintenance" or "O&M" shall mean all activities required to operate, maintain, and monitor the effectiveness of the RA as specified in the SOW or any EPA-approved O&M Plan.

"Paragraph" or "¶" shall mean a portion of this CD identified by an Arabic numeral or an upper or lower case letter.

"Parties" shall mean the United States, the State of Idaho, the Shoshone-Bannock Tribes, and Settling Defendant.

"Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with the Site starting on November 1, 2018 through August 31, 2019, plus Interest on all such costs that has accrued pursuant to 42 U.S.C. § 9607(a) through such date.

"Performance Standards" or "PS" shall mean the cleanup levels and other measures of achievement of the remedial action objectives, as set forth in the ROD.

"Plaintiffs" shall mean the United States, the State of Idaho, and the Shoshone-Bannock Tribes.

"Proprietary Controls" shall mean easements or covenants running with the land that (a) limit land, water, or other resource use and/or provide access rights and (b) are created pursuant to common law or statutory law by an instrument that is recorded in the appropriate land records office.

"RCRA" shall mean the Solid Waste Disposal Act, 42 U.S.C. §§ 6901-6992 (also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "ROD" shall mean the EPA Record of Decision relating to the Ballard Mine Superfund Site signed on September 24, 2019, by the Regional Administrator, EPA Region 10, or his/her delegate, and all attachments thereto. The ROD is attached as Appendix A.

"Remedial Action" or "RA" shall mean the remedial action selected in the ROD.

"Remedial Design" or "RD" shall mean those activities to be undertaken by Settling Defendant to develop final plans and specifications for the RA as stated in the SOW.

"Section" shall mean a portion of this CD identified by a Roman numeral.

"Settling Defendant" shall mean P4 Production, L.L.C., defendant in this action and signatory to this Consent Decree.

"Site" shall mean OU1 of the Ballard Mine Site, located 13 miles north-northeast of Soda Springs, Idaho, in Caribou County, and depicted on the map attached hereto as Appendix C. The Site includes the areal extent of contamination and all suitable areas in very close proximity to the contamination for response action, implementation, and materials handling. The Site does not include OU2, which is the Ballard Shop Area.

"State" shall mean the State of Idaho.

"State Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the State incurs at or in connection with the Work after March 31, 2020, plus Interest on all such costs that has accrued pursuant to 42 U.S.C. § 9607(a) through such date.

"Statement of Work" or "SOW" shall mean the document describing the activities Settling Defendant must perform to implement the RD, the RA, and O&M regarding the Site, which is attached as Appendix B.

"Supervising Contractor" shall mean the principal contractor retained by Settling Defendant to supervise and direct the implementation of the Work under this CD.

"Support Agency" means an agency that provides a support agency coordinator or project manager to furnish necessary data to EPA, or that reviews response data and documents, and/or provides other assistance requested by EPA's Remedial Project Manager. The FWS, IDEQ, and the Tribes are Support Agencies at the Ballard Mine Superfund Site.

"Transfer" shall mean to sell, assign, convey, lease, mortgage, or grant a security interest in, or where used as a noun, a sale, assignment, conveyance, or other disposition of any interest by operation of law or otherwise.

"Tribal Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the Tribes incurred at or in connection with the Site after November 30, 2020, plus Interest on all such costs that has accrued pursuant to 42 U.S.C. § 9607(a) through such date.

"Tribal Past Response Costs" shall mean all costs, including but not limited to direct and indirect costs, that the Tribes paid at or in connection with the Site before December 1, 2020,

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

plus Interest on all such costs that has accrued pursuant to 42 U.S.C. § 9607(a) through such date.

"Tribes" shall mean the Shoshone-Bannock Tribes of Fort Hall, Idaho.

"United States" shall mean the United States of America and each department, agency, and instrumentality of the United States, including EPA, FWS, and any federal natural resource trustee.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33) of CERCLA, 42 U.S.C. § 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C.§ 6903(27); and (4), any "pollutant" under Idaho Code § 39-3602(24) and IDAPA 58.01.02.010.79, any "hazardous material" under IDAPA 58.01.02.010.47, and any "deleterious  material" under IDAPA 58.01.02.010.21.

"Work" shall mean all activities and obligations Settling Defendant is required to perform under this CD, except the activities required under Section XIX (Retention of Records).  The Work does not include any ore recovery that Settling Defendant plans for or conducts at the Site before or during implementation of the remedy, or any application for any federal, state, or local permit required for or associated with such activity.

## V.    GENERAL PROVISIONS

5.    **Objectives of the Parties**. The objectives of the Parties in entering into this CD are to protect public health or welfare or the environment by the design and implementation of response actions at the Site by Settling Defendant, to pay response costs of Plaintiffs, and to resolve the claims of Plaintiffs against Settling Defendant as provided in this CD.

6.    **Commitments by Settling Defendant**. Settling Defendant shall finance and perform the Work in accordance with this CD and all deliverables developed by Settling Defendant and approved or modified by EPA pursuant to this CD. Settling Defendant shall pay the Plaintiffs for their response costs, as provided in this CD.

7.    **Compliance with Applicable Law**. Nothing in this CD limits Settling Defendant's obligation to comply with the requirements of all applicable federal and state laws and regulations, including all statutes and regulations applicable to prospecting for, mining, and removing minerals at the Site. Settling Defendant must also comply with all applicable or relevant and appropriate requirements of all federal and state environmental laws as set forth in the ROD and the SOW. The activities conducted pursuant to this CD, if approved by EPA, shall be deemed to be consistent with the NCP as provided in Section 300.700(c)(3)(ii) of the NCP.

8.    **Permits**
       a.    As provided in Section 121(e) of CERCLA, 42 U.S.C. § 9621(e), and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

proximity to the contamination and necessary for implementation of the Work). Where any portion of the Work that is not on-site requires a federal or state permit or approval, Settling Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.  Settling Defendant shall also comply with Idaho's Mined Land Reclamation Act, Idaho Code § 47-1501, *et seq*.

       b.    Information collected during site characterization activities confirmed that about four million tons of phosphate ore remain at the Site, both exposed at the surface and in the bottoms and sidewalls of existing mine pits. The remedy selected in the ROD anticipates that Settling Defendant will recover phosphate ore concurrently with implementation of the remedy. Although ore recovery is not part of the selected remedy, the remedy has been designed to be compatible with Settling Defendant's intention to pursue future mining operations. Section 121(e) of CERCLA, 42 U.S.C. § 9621(e), and Section 300.400(e) of the NCP, do not apply to any permits required for Settling Defendant to conduct any ore recovery or mining operations at the Site.  Settling Defendant will need to acquire a federal mineral lease and seek approval from the Bureau of Land Management of a plan for ore recovery in order to conduct any ore recovery at the Site.

       c.    Settling Defendant agrees that all applications for prospecting, mineral leasing, mining, or mining-related activity at the Site will include only areas previously disturbed by mining as depicted in Appendix C.

       d.    Settling Defendant may seek relief under the provisions of Section XII (Force Majeure) for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit or approval referenced in ¶ 8.a and required for the Work, provided that they have submitted timely and complete applications and taken all other actions necessary to obtain all such permits or approvals.

       e.    This CD is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

## VI.   PERFORMANCE OF THE WORK

9.    **Coordination and Supervision**

    a.    **Project Coordinators**

       (1)    Settling Defendant's Project Coordinator must have sufficient technical expertise to coordinate the Work. Settling Defendant's Project Coordinator may not be an attorney representing Settling Defendant in this matter and may not act as the Supervising Contractor. Settling Defendant's Project Coordinator may assign other representatives, including other contractors, to assist in coordinating the Work.

       (2)    EPA shall designate and notify the Settling Defendant of EPA's Project Coordinator and Alternate Project Coordinator. EPA may designate other

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

representatives, which may include its employees, contractors and/or consultants, to oversee the Work. EPA's Project Coordinator/Alternate Project Coordinator will have the same authority as a remedial project manager and/or an on-scene coordinator, as described in the NCP. This includes the authority to halt the Work and/or to conduct or direct any necessary response action when he or she determines that conditions at the Site constitute an emergency or may present an immediate threat to public health or welfare or the environment due to a release or threatened release of Waste Material.

(3)     The State shall designate and notify EPA and the Settling Defendant of its Project Coordinator and Alternate Project Coordinator. The State may designate other representatives, including its employees, contractors and/or consultants to oversee the Work. For any meetings and inspections in which EPA's Project Coordinator participates, the State's Project Coordinator also may participate. Settling Defendant shall notify the State reasonably in advance of any such meetings or inspections.

(4)     The Tribes shall designate and notify EPA and the Settling Defendant of their Project Coordinator and Alternate Project Coordinator. The Tribes may designate other representatives, including their employees, contractors and/or consultants to oversee the Work. For any meetings and inspections in which EPA's Project Coordinator participates, the Tribes' Project Coordinator also may participate. Settling Defendant shall notify the Tribes reasonably in advance of any such meetings or inspections.

(5)     Settling Defendant's Project Coordinator shall meet with EPA's, the State's, and the Tribes' Project Coordinators at least monthly.

b.     **Supervising Contractor**. Settling Defendant's proposed Supervising Contractor must have sufficient technical expertise to supervise the Work and a quality assurance system that complies with ANSI/ASQC E4-2004, Quality Systems for Environmental Data and Technology Programs: Requirements with Guidance for Use (American National Standard).

c.     **Procedures for Disapproval/Notice to Proceed**

(1)     Settling Defendant shall designate, and notify EPA, the State, and the Tribes, within 10 days after the Effective Date, of the names, titles, contact information, and qualifications of the Settling Defendant's proposed Project Coordinator and Supervising Contractor, whose qualifications shall be subject to EPA's review for verification based on objective assessment criteria (e.g., experience, capacity, and technical expertise) and do not have a conflict of interest with respect to the project.

(2)     EPA, after a reasonable opportunity for review and comment by the State and Tribes, shall issue notices of disapproval and/or authorizations to proceed regarding the proposed Project Coordinator and Supervising Contractor,

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

as applicable. If EPA issues a notice of disapproval, Settling Defendant shall, within 30 days, submit to EPA a list of supplemental proposed Project Coordinators and/or Supervising Contractors, as applicable, including a description of the qualifications of each. EPA shall issue a notice of disapproval or authorization to proceed regarding each supplemental proposed coordinator and/or contractor. Settling Defendant may select any coordinator/contractor covered by an authorization to proceed and shall, within 21 days, notify EPA of Settling Defendant's selection.

(3)     Settling Defendant may change its Project Coordinator and/or Supervising Contractor, as applicable, by following the procedures of ¶¶ 9.c(1) and 9.c(2).

(4)     Notwithstanding the procedures of ¶¶ 9.c(1) through 9.c(3), Settling Defendant has proposed, and EPA has authorized Settling Defendant to proceed, regarding the following Project Coordinator and Supervising Contractor:

**Project Coordinator:**

Chris Leatherman
1853 Highway 34
PO Box 816
Soda Springs, Idaho 83276
(208) 547-1435
chris.leatherman@bayer.com

**Supervising Contractor:**

Vance Drain
Stantec
2890 East Cottonwood Parkway, Suite 300
Salt Lake City, Utah 84121
(801) 617-3250
vance.drain@stantec.com

10.     **Performance of Work in Accordance with SOW**. Settling Defendant shall: (a) develop the RD; (b) perform the RA; and (c) operate, maintain, and monitor the effectiveness of the RA; all in accordance with the SOW and all EPA-approved, conditionally approved, or modified deliverables as required by the SOW. All deliverables required to be submitted for approval under the CD or SOW shall be subject to approval by EPA in accordance with ¶ 6.6 (Approval of Deliverables) of the SOW.

11.     **Emergencies and Releases**. Settling Defendant shall comply with the emergency and release response and reporting requirements under ¶ 4.4 (Emergency Response and Reporting) of the SOW. Subject to Section XV (Covenants by Plaintiffs), nothing in this CD, including ¶ 4.4 of the SOW, limits any authority of Plaintiffs: (a) to take all appropriate action to

protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or (b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site. If, due to Settling Defendant's failure to take appropriate response action under ¶ 4.4 of the SOW, EPA or the State takes such action instead, Settling Defendant shall reimburse EPA and the State under Section X (Payments for Response Costs) for all costs of the response action.

12. **Community Involvement**. If requested by EPA, Settling Defendant shall conduct community involvement activities under EPA's oversight as provided for in, and in accordance with, Section 2 (Community Involvement and Technical Assistance) of the SOW. Such activities may include, but are not limited to, designation of a Community Involvement Coordinator and implementation of a technical assistance plan. Costs incurred by the United States under this Section constitute Future Response Costs to be reimbursed under Section X (Payments for Response Costs).

13. **Modification of SOW or Related Deliverables**
    a.    If EPA determines, after consultation with the State and the Tribes, that it is necessary to modify the work specified in the SOW and/or in deliverables developed under the SOW in order to achieve and/or maintain the Performance Standards or to carry out and maintain the effectiveness of the RA, and such modification is consistent with the Scope of the Remedy set forth in ¶ 1.3 of the SOW, then EPA may notify Settling Defendant of such modification. If Settling Defendant objects to the modification it may, within 30 days after EPA's notification, seek dispute resolution under Section XIII.

    b.    The SOW and/or related work plans shall be modified: (1) in accordance with the modification issued by EPA; or (2) if Settling Defendant invokes dispute resolution, in accordance with the final resolution of the dispute. The modification shall be incorporated into and enforceable under this CD, and Settling Defendant shall implement all work required by such modification. Settling Defendant shall incorporate the modification into the deliverable required under the SOW, as appropriate.

    c.    Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this CD.

14. Nothing in this CD, the SOW, or any deliverable required under the SOW constitutes a warranty or representation of any kind by Plaintiffs that compliance with the work requirements set forth in the SOW or related deliverable will achieve the Performance Standards.

## VII. REMEDY REVIEW

15. **Periodic Review**. Settling Defendant shall conduct, in accordance with ¶ 4.8 (Periodic Review Support Plan) of the SOW, studies and investigations to support EPA's

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

reviews under Section 121(c) of CERCLA, 42 U.S.C. § 9621(c), and applicable regulations, of whether the RA is protective of human health and the environment.

## VIII.  PROPERTY REQUIREMENTS

16.     **Agreements Regarding Access and Non-Interference.** Settling Defendant shall, with respect to any Non-Settling Owner's Affected Property, use best efforts to secure from such Non-Settling Owner an agreement, enforceable by Settling Defendant and by Plaintiffs, providing that such Non-Settling Owner, and Settling Defendant shall, with respect to Settling Defendant's Affected Property: (i) provide Plaintiffs and their representatives, contractors, and subcontractors with access at all reasonable times to such Affected Property to conduct any activity regarding the CD, including those listed in ¶ 16.a (Access Requirements); and (ii) refrain from using such Affected Property in any manner that EPA determines will pose an unacceptable risk to human health or to the environment due to exposure to Waste Material, or interfere with or adversely affect the implementation, integrity, or protectiveness of the Remedial Action, including the restrictions listed in ¶ 16.b (Land, Water, or Other Resource Use Restrictions). Settling Defendant shall provide a copy of any such access and use restriction agreements to EPA, the State, and the Tribes.

a.     **Access Requirements**. The following is a list of activities for which access is required regarding the Affected Property:

(1)     Monitoring the Work;

(2)     Verifying any data or information submitted to the United States or the State;

(3)     Conducting investigations regarding contamination at or near the Site;

(4)     Obtaining samples;

(5)     Assessing the need for, planning, or implementing additional response actions at or near the Site;

(6)     Assessing implementation of quality assurance and quality control practices as defined in the approved construction quality assurance quality control plan as provided in the SOW;

(7)     Implementing the Work pursuant to the conditions set forth in ¶ 61 (Work Takeover);

(8)     Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendant or their agents, consistent with Section XVIII (Access to Information);

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

(9)      Assessing Settling Defendant's compliance with the CD;

(10)     Determining whether the Affected Property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted under the CD; and

(11)     Implementing, monitoring, maintaining, reporting on, and enforcing any land, water, or other resource use restrictions and Institutional Controls.

b.      **Land, Water, or Other Resource Use Restrictions**. Except as otherwise provided by easement or as necessary to complete the Work, the following is a list of land, water, or other resource use restrictions applicable to the Affected Property:

(1)      For the areal extent of the evapotranspiration cover system: Government and Proprietary controls in the form of zoning for State and County land, and deed restrictions and restrictive covenants for private property, as well as road closures utilizing fencing, locked gates, and signage, to prohibit access to and new construction within the areal extent of the evapotranspiration cover system at the Site;

(2)      For the evapotranspiration cover system: Government and Proprietary controls in the form of zoning for State and County land, and deed restrictions and restrictive covenants for private property, as well as road closures utilizing fencing, locked gates, and signage, to prohibit physical access by public vehicles of any kind (including dirt bikes and off-road recreational vehicles) to the evapotranspiration cover until the issuance of the Certificate of Completion.;

(3)      For the evapotranspiration cover system: Government and Proprietary controls in the form of zoning for State and County land, and deed restrictions and restrictive covenants for private property, as well as road closures utilizing fencing, locked gates, and signage, to prohibit residential construction and occupancy on the evapotranspiration cover across the Site; and

(4)      For the evapotranspiration cover system: Government and Proprietary controls in the form of zoning for State and County land, and deed restrictions and restrictive covenants for private property, as well as road closures utilizing fencing, locked gates, and signage, to prohibit long-term livestock grazing on the evapotranspiration cover until issuance of the Certificate of Completion.

17.     **Best Efforts**. As used in this Section, "best efforts" means the efforts that a reasonable person in the position of Settling Defendant would use so as to achieve the goal in a timely manner, including the cost of employing professional assistance and the payment of reasonable sums of money to secure access and/or use restriction agreements, Proprietary Controls, releases, subordinations, modifications, or relocations of Prior Encumbrances that affect the title to the Affected Property, as applicable. If Settling Defendant is unable to

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

accomplish what is required through "best efforts" in a timely manner, it shall notify EPA, the State, and the Tribes, and include a description of the steps taken to comply with the requirements. If the United States deems it appropriate, it may assist Settling Defendant, or take independent action, in obtaining such access and/or use restrictions, Proprietary Controls, releases, subordinations, modifications, or relocations of Prior Encumbrances that affect the title to the Affected Property, as applicable. All costs incurred by the United States in providing such assistance or taking such action, including the cost of attorney time and the amount of monetary consideration or just compensation paid, constitute Future Response Costs to be reimbursed under Section X (Payments for Response Costs).

18.     If EPA determines in a decision document prepared in accordance with the NCP that Institutional Controls in the form of state or local laws, regulations, ordinances, zoning restrictions, or other governmental controls or notices are needed, Settling Defendant shall cooperate with EPA's and the State's efforts to secure and ensure compliance with such Institutional Controls.

19.     In the event of any Transfer of the Affected Property, unless the United States otherwise consents in writing, Settling Defendant shall continue to comply with its obligations under the CD, including its obligation to secure access and ensure compliance with any land, water, or other resource use restrictions regarding the Affected Property, and to implement, maintain, monitor, and report on Institutional Controls.

20.     Notwithstanding any provision of the CD, Plaintiffs retain all of their access authorities and rights, as well as all of their rights to require land, water, or other resource use restrictions and Institutional Controls, including enforcement authorities related thereto, under CERCLA, RCRA, and any other applicable statute or regulations.

## IX.     FINANCIAL ASSURANCE

21.     In order to ensure completion of the Work, Settling Defendant shall secure financial assurance, initially in the amount of $98,000,000 for the benefit of EPA. The financial assurance must be one or more of the mechanisms listed below, in a form substantially identical to the relevant sample documents available from EPA or under the "Financial Assurance - Settlements" category on the Cleanup Enforcement Model Language and Sample Documents Database at https://cfpub.epa.gov/compliance/models/, and satisfactory to EPA. Settling Defendant may use multiple mechanisms if they are limited to surety bonds guaranteeing payment, letters of credit, trust funds, and/or insurance policies.

a.     A surety bond guaranteeing payment and/or performance of the Work that is issued by a surety company among those listed as acceptable sureties on federal bonds as set forth in Circular 570 of the United States Department of the Treasury;

b.     An irrevocable letter of credit, payable to or at the direction of EPA, that is issued by an entity that has the authority to issue letters of credit and whose letter-of-credit operations are regulated and examined by a federal or state agency;

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

c.      A trust fund established for the benefit of EPA that is administered by a trustee that has the authority to act as a trustee and whose trust operations are regulated and examined by a federal or state agency; or

d.      A policy of insurance that provides EPA with acceptable rights as a beneficiary thereof and that is issued by an insurance carrier that has the authority to issue insurance policies in the applicable jurisdiction(s) and whose insurance operations are regulated and examined by a federal or state agency.

22.      Within 30 days of the Effective Date, Settling Defendant shall obtain EPA's approval of the form of Settling Defendant's financial assurance.  Within 30 days of such approval, Settling Defendant shall secure all executed and/or otherwise finalized mechanisms or other documents consistent with the EPA-approved form of financial assurance and shall submit such mechanisms and documents to the Regional Financial Management Officer, to the United States, and to EPA and the State as specified in Section XX (Notices and Submissions).

23.      Settling Defendant shall diligently monitor the adequacy of the financial assurance. If Settling Defendant becomes aware of any information indicating that the financial assurance provided under this Section is inadequate or otherwise no longer satisfies the requirements of this Section, Settling Defendant shall notify EPA of such information within 7 days. If EPA determines that the financial assurance provided under this Section is inadequate or otherwise no longer satisfies the requirements of this Section, EPA will notify the Settling Defendant of such determination. Settling Defendant shall, within 30 days after notifying EPA or receiving notice from EPA under this Paragraph, secure and submit to EPA for approval a proposal for a revised or alternative financial assurance mechanism that satisfies the requirements of this Section. EPA may extend this deadline for such time as is reasonably necessary for Settling Defendant, in the exercise of due diligence, to secure and submit to EPA a proposal for a revised or alternative financial assurance mechanism, not to exceed 60 days. Settling Defendant shall follow the procedures of ¶ 25 (Modification of Financial Assurance) in seeking approval of, and submitting documentation for, the revised or alternative financial assurance mechanism. Settling Defendant's inability to secure financial assurance in accordance with this Section does not excuse performance of any other obligation under this Settlement.

24.      **Access to Financial Assurance**

a.      If EPA issues a notice of implementation of a Work Takeover under ¶ 61.b, then, in accordance with any applicable financial assurance mechanism, EPA is entitled to: (1) the performance of the Work; and/or (2) require that any funds guaranteed be paid in accordance with ¶ 24.d.

b.      If EPA is notified by the issuer of a financial assurance mechanism that it intends to cancel the mechanism, and the Settling Defendant fails to provide an alternative financial assurance mechanism in accordance with this Section at least 30 days prior to the cancellation date, the funds guaranteed under such mechanism must be paid prior to cancellation in accordance with ¶ 24.d.

c.      If, upon issuance of a notice of implementation of a Work Takeover under ¶ 61.b, EPA is unable for any reason to promptly secure the resources guaranteed under any

applicable financial assurance mechanism, whether in cash or in kind, to continue and complete the Work, then EPA is entitled to demand an amount, as determined by EPA, sufficient to cover the cost of the remaining Work to be performed. Settling Defendant shall, within 21 days of such demand, pay the amount demanded as directed by EPA.

   d. Any amounts required to be paid under this ¶ 24 shall be, as directed by EPA: (i) paid to EPA in order to facilitate the completion of the Work by EPA, the State, or by another person; or (ii) deposited into an interest-bearing account, established at a duly chartered bank or trust company that is insured by the FDIC, in order to facilitate the completion of the Work by another person. If payment is made to EPA, EPA may deposit the payment into the EPA Hazardous Substance Superfund or into the Ballard Mine Superfund Site RD/RA Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

   e. All EPA Work Takeover costs not paid under this ¶ 24 must be reimbursed as Future Response Costs under Section X (Payments for Response Costs).

  25. **Modification of Amount, Form, or Terms of Financial Assurance**. Settling Defendant may submit, as part of its submission of its Annual Construction Report pursuant to SOW Section 4.3(d) (Annual Construction Report) or at any other time agreed to by the Parties, a request to reduce the amount, or change the form or terms, of the financial assurance mechanism. Any such request must be submitted to EPA in accordance with ¶ 22, and must include an estimate of the cost of the remaining Work, an explanation of the bases for the cost calculation, and a description of the proposed changes, if any, to the form or terms of the financial assurance. EPA will notify Settling Defendants of its decision regarding the request. Settling Defendants may initiate dispute resolution under Section XIII regarding EPA's decision within 30 days after receipt of the decision. Settling Defendant may reduce the amount of the financial assurance mechanism only in accordance with: (a) EPA's approval; or (b) if there is a dispute, the agreement, final administrative decision, or final judicial decision resolving such dispute under Section XIII (Dispute Resolution). Settling Defendant may change the form or terms of the financial assurance mechanism only in accordance with EPA's approval. Within 30 days after receipt of EPA's approval of, or the agreement or decision resolving a dispute relating to, the requested modifications pursuant to this Paragraph, Settling Defendant shall submit to EPA documentation of the reduced, revised, or alternative financial assurance mechanism in accordance with ¶ 22.

  26. **Release, Cancellation, or Discontinuation of Financial Assurance**. Settling Defendant may release, cancel, or discontinue any financial assurance provided under this Section only: (a) if EPA issues a Certification of Work Completion under ¶ 4.9 (Certification of Work Completion) of the SOW; (b) in accordance with EPA's approval of such release, cancellation, or discontinuation; or (c) if there is a dispute regarding the release, cancellation or discontinuance of any financial assurance, in accordance with the agreement, final administrative decision, or final judicial decision resolving such dispute under Section XIII (Dispute Resolution).

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

# X.    PAYMENTS FOR RESPONSE COSTS

27.    **Payments by Settling Defendant for Plaintiffs' Past Response Costs**.

a.    Within 30 days after the Effective Date, Settling Defendant shall pay to EPA $334,972.02 in payment for Past Response Costs. The Financial Litigation Unit ("FLU") of the United States Attorney's Office for the District of Idaho shall provide to Settling Defendant, in accordance with ¶ 83, instructions for making this payment, including a Consolidated Debt Collection System ("CDCS") reference number. Settling Defendant shall make such payment at https://www.pay.gov in accordance with the FLU's instructions, including references to the CDCS Number, Site/Spill ID Number 10SG, and DJ Number 90-11-2-07884/7. Settling Defendant shall send to DOJ and EPA, in accordance with ¶ 83, a notice of this payment including these references.

b.    **Deposit of Past Response Costs Payment**. The total amount to be paid by Settling Defendant pursuant to ¶ 27.a shall be deposited by EPA in the Ballard Mine Superfund Site RD/RA Special Account to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

c.    Within 30 days after the Effective Date, Settling Defendant shall pay to the Tribes the sum of $10,800 by certified or cashier's check, for the reimbursement of Tribal Past Response Costs. Payments to the Tribes shall be made to:

Environmental Waste Management Program
Shoshone-Bannock Tribes
P.O. Box 306
Fort Hall, Idaho 83203

28.    **Payments by Settling Defendant for Plaintiffs' Future Response Costs**. Settling Defendant shall pay all Plaintiffs' Future Response Costs not inconsistent with the NCP.

a.    **Periodic Bills**. On a periodic basis, EPA will send Settling Defendant a bill requiring payment that includes a SCORPIOS cost summary, which includes direct and indirect costs incurred by EPA, its contractors, subcontractors, and DOJ. Settling Defendant shall make all payments within 45 days after Settling Defendant's receipt of each bill requiring payment, except as otherwise provided in ¶ 29, at https://www.pay.gov using the "EPA Miscellaneous Payments Cincinnati Finance Center" link, and including references to the Site/Spill ID number 10SG, the DJ number 90-11-2-07884/7, and the purpose of the payment. Settling Defendant shall send to DOJ and EPA, in accordance with ¶ 83, a notice of this payment including these references.

b.    **Deposits of Future Response Cost Payments**. The total amount to be paid by Settling Defendant pursuant to ¶ 28.a (Periodic Bills) shall be deposited by EPA in the Ballard Mine Superfund Site RD/RA Special Account to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund, provided, however, that EPA may deposit a Future Response

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

Costs payment directly into the EPA Hazardous Substance Superfund if, at the time the payment is received, EPA estimates that the Ballard Mine Superfund Site RD/RA Special Account balance is sufficient to address currently anticipated future response actions to be conducted or financed by EPA at or in connection with the Site.

        c.      **Payments by Settling Defendant to FWS**.  Within thirty (30) days after the Effective Date, as an initial deposit, Settling Defendant shall pay the sum of Twenty Thousand Dollars ($20,000.00) to FWS to be deposited to an account established for this Site. Within 365 days after the Effective Date, and annually thereafter, FWS shall submit to Settling Defendant an estimated annual cost budget. Within thirty (30) days of receipt of the estimated annual cost budget, Settling Defendant shall deposit with FWS an amount equal to the estimated annual cost budget. The amount of Settling Defendant's annual payment shall be reduced by the amount of any carryover remaining from the previous year. Within 180 days of the Effective Date, and every 180 days thereafter, FWS shall provide Settling Defendant an accounting of its costs, including supporting cost summaries. Within 120 days after completion of FWS support activities under this Settlement Agreement, FWS shall provide Settling Defendant with a final cost accounting. In the event that the monies remain in the Fund, FWS shall reimburse Settling Defendant within thirty (30) days of submission of the final cost accounting. Payments to FWS shall be made by electronic funds transfer through the Department of Treasury's Automated Clearing House/Remittance Express Program. Payments should include the following information:

| | |
|---|---|
| Receiver Name: | Central Hazardous Materials Fund<br>ALC 1401001 |
| Receiver Tax ID Number: | 53-0196949 |
| Receiver Address: | Department of the Interior<br>Interior Business Center / Financial Management Directorate<br>Branch of Accounting Operations<br>Mailstop D-2770<br>7401 West Mansfield Avenue<br>Lakewood, CO 80235<br>ATTN: Central Hazardous Materials Fund Payment |
| Receiver Bank: | Federal Reserve Bank<br>New York, NY<br>ABA #051036706 |

Receiver ACH Account No.: 312024

    Each payment shall reference: Site Name: Southeast Idaho Phosphate Mining – Ballard Mine Consent Decree. In addition, DOI requests that at the time of payment, Settling Defendant send notification of payment referencing the amount of payment and the Site name to the DOI contacts identified in Paragraph 83 and to the following individual:

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

United States Department of the Interior
Central Hazardous Materials Fund
Attn: CHF Coordinator
1849 C Street, N.W.
Mail Stop 2616
Washington, DC 20240

      d.      **Payments by Settling Defendant for State Future Response Costs**.
Within thirty (30) days after the Effective Date, as an initial deposit, Settling Defendant shall pay
the sum of Ten Thousand Dollars ($10,000.00) in prepayment of State Future Response Costs to
the State to be deposited to an account established for this Site.  Thereafter, IDEQ shall provide a
quarterly accounting and invoice to Defendant for State Future Response Costs.  Within thirty
(30) days of Defendant's receipt of IDEQ's quarterly accounting invoice, Defendant shall
reimburse the State for all State Future Response Costs not inconsistent with the NCP reflected
in the accounting invoice, except as otherwise provided in ¶ 29 (Contesting Future Response
Costs).  The initial deposit will be returned to Defendant within sixty (60) days after the date
IDEQ receives payment of its final State Future Response Costs.  Payments to the State shall be
made to:

      Administrative Services-Accounts Receivable
      Idaho Department of Environmental Quality
      1410 N. Hilton
      Boise, ID 83706-1255

      e.      **Payments by Settling Defendant to the Tribes.**  Settling Defendant
agrees to pay the sum of up to sixty-five thousand dollars ($65,000) per year to pay Tribal Future
Response Costs.  Within thirty (30) days after the Effective Date, Settling Defendant shall pay
the sum of sixty-five thousand ($65,000) to the Tribes to be deposited to an account established
for this Site. Within 365 days after the Effective Date, and annually thereafter, the Tribes shall
submit to Settling Defendant an estimated annual cost budget. Within thirty (30) days of receipt
of the estimated annual cost budget, Settling Defendant shall deposit with the Tribes an amount
equal to the estimated annual cost budget. The amount of Settling Defendant's annual payment
shall be reduced by the amount of any carryover remaining from the previous year. Within 180
days of the Effective Date, and every 180 days thereafter, the Tribes shall provide Settling
Defendant an accounting of its costs, including supporting cost summaries. Within 120 days after
completion of Tribal support activities under this Settlement Agreement, the Tribes shall provide
Settling Defendant with a final cost accounting. In the event that the monies remain in the Fund,
the Tribes shall reimburse Settling Defendant within thirty (30) days of submission of the final
cost accounting. Payments to the Tribes shall be made by certified or cashier's check made
payable to the Shoshone-Bannock Tribes and mailed to:

      Environmental Waste Management Program
      Shoshone-Bannock Tribes
      PO Box 306
      Fort Hall, Idaho 83203

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

29.     **Contesting Future Response Costs**. Settling Defendant may submit a Notice of Dispute, initiating the procedures of Section XIII (Dispute Resolution), regarding any Future Response Costs, State Future Response Costs, or Tribal Future Response Costs billed under ¶ 28 (Payments by Settling Defendant for Future Response Costs) if Settling Defendant determines that EPA, FWS, the State, or the Tribes made a mathematical error or included a cost item that is not within the definition of Future Response Costs, State Future Response Costs, or Tribal Future Response Costs, or if it believes EPA, FWS, the State, or the Tribes incurred excess costs as a direct result of an EPA,FWS, State, or Tribal action that was inconsistent with a specific provision or provisions of the NCP, or, in the case of State Future Response Costs only, inconsistent with applicable State regulations, or, in the case of the Tribes only, inconsistent with applicable Tribal regulations or in excess of $65,000. Such Notice of Dispute shall be submitted in writing within 30 days after receipt of the bill and must be sent to the United States (if the United States' accounting is being disputed), the State (if the State's accounting is being disputed) pursuant to Section XX (Notices and Submissions), or the Tribes (if the Tribes' accounting is being disputed). Such Notice of Dispute shall specifically identify the contested Future Response Costs, State Future Response Costs, or Tribal Future Response Costs and the basis for objection. If Settling Defendant submits a Notice of Dispute, Settling Defendant shall within the 30-day period, also as a requirement for initiating the dispute, (a) pay all uncontested Future Response Costs to the United States, all uncontested State Future Response Costs to the State, and all uncontested Tribal Future Response Costs to the Tribes, and (b) establish, in a duly chartered bank or trust company, an interest-bearing escrow account that is insured by the Federal Deposit Insurance Corporation (FDIC), and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs, State Future Response Costs, or Tribal Future Response Costs. Settling Defendant shall send to the United States, the State, or the Tribes, as appropriate, as provided in Section XX (Notices and Submissions), a copy of the transmittal letter and check paying the uncontested Future Response Costs, State Future Response Costs, or Tribal Future Response Costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account. If the United States, the State, or the Tribes prevails in the dispute, Settling Defendant shall pay the sums due (with accrued interest) to the United States, the State, or the Tribes as appropriate within 7 days after the resolution of the dispute. If Settling Defendant prevails concerning any aspect of the contested costs, Settling Defendant shall pay that portion of the costs (plus associated accrued interest) for which they did not prevail to the United States, the State, or the Tribes as appropriate within 7 days after the resolution of the dispute. Settling Defendant shall be disbursed any balance of the escrow account. All payments to the United States, the State, or the Tribes under this Paragraph shall be made in accordance with ¶ 28, as applicable (instructions for future response cost payments). The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XIII (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding Settling Defendant's obligation to reimburse the United States, the State, or the Tribes for their Future Response Costs.

30.     **Interest**. In the event that any payment for Plaintiffs' Past Response Costs or Future Response Costs required under this Section is not made by the date required, Settling

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

Defendant shall pay Interest on the unpaid balance. The Interest on Past Response Costs, State Future Response Costs, Tribal Past Response Costs, and Tribal Future Response Costs shall begin to accrue on the Effective Date. The Interest on Future Response Costs and all subsequent State Future Response Costs and Tribal Future Response Costs shall begin to accrue on the date of the bill. The Interest shall accrue through the date of Settling Defendant's payment. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiffs by virtue of Settling Defendant's failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Section XIV (Stipulated Penalties).

## XI.   INDEMNIFICATION AND INSURANCE

31.    **Settling Defendant's Indemnification of the United States, the State, and the Tribes**

a.    The United States, the State, and the Tribes do not assume any liability by entering into this CD or by virtue of any designation of Settling Defendant as EPA's authorized representatives under Section 104(e) of CERCLA, 42 U.S.C. § 9604(e). Settling Defendant shall indemnify, save, and hold harmless the United States, the State, and the Tribes and their officials, agents, employees, contractors, subcontractors, and representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on Settling Defendant's behalf or under its control, in carrying out activities pursuant to this CD, including, but not limited to, any claims arising from any designation of Settling Defendant as EPA's, the State's, and the Tribes' authorized representative under Section 104(e) of CERCLA. Further, Settling Defendant agrees to pay the United States, the State, and the Tribes all costs they incur including, but not limited to, attorneys' fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States, the State, and the Tribes based on negligent or other wrongful acts or omissions of Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on its behalf or under its control, in carrying out activities pursuant to this CD. Neither the United States, nor the State, nor the Tribes shall be held out as a party to any contract entered into by or on behalf of Settling Defendant in carrying out activities pursuant to this CD. Neither Settling Defendant nor any such contractor shall be considered an agent of the United States, the State, or the Tribes.

b.    The United States, the State, and the Tribes, respectively, shall give Settling Defendant notice of any claim for which they plan to seek indemnification pursuant to this ¶ 31, and shall consult with Settling Defendant prior to settling such claim.

32.    Settling Defendant covenants not to sue and agrees not to assert any claims or causes of action against the United States, the State, and the Tribes, respectively, for damages or reimbursement or for set-off of any payments made or to be made to the United States, the State, or the Tribes arising from or on account of any contract, agreement, or arrangement between Settling Defendant and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays. In addition, Settling Defendant shall

indemnify, save and hold harmless the United States, the State, and the Tribes with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between Settling Defendant and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.

33.     **Insurance**. No later than 15 days before commencing any on-site Work, Settling Defendant shall secure, and shall maintain until the first anniversary after issuance of EPA's Certification of RA Completion pursuant to ¶ 4.7 (Certification of RA Completion) of the SOW commercial general liability insurance with limits of liability of $1 million per occurrence, automobile liability insurance with limits of liability of $1 million per accident, and umbrella liability insurance with limits of liability of $5 million in excess of the required commercial general liability and automobile liability limits, naming the United States, the State, and the Tribes as additional insureds with respect to all liability arising out of the activities performed by or on behalf of Settling Defendant pursuant to this CD. In addition, for the duration of this CD, Settling Defendant shall satisfy, or shall ensure that its contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Defendant in furtherance of this CD. Prior to commencement of the Work, Settling Defendant shall provide to EPA, the State, and the Tribes certificates of such insurance and a copy of each insurance policy. Settling Defendant shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date. If Settling Defendant demonstrates by evidence satisfactory to EPA, the State, and the Tribes that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling Defendant need provide only that portion of the insurance described above that is not maintained by the contractor or subcontractor. Settling Defendant shall ensure that all submittals to EPA, the State, and the Tribes under this Paragraph identify the Ballard Mine Superfund Site, Caribou County, Idaho, and the civil action number of this case.

## XII.   FORCE MAJEURE

34.     "Force majeure," for purposes of this CD, is defined as any event arising from causes beyond the control of Settling Defendant, of any entity controlled by Settling Defendant, or of Settling Defendant's contractors that delays or prevents the performance of any obligation under this CD despite Settling Defendant's best efforts to fulfill the obligation. The requirement that Settling Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (a) as it is occurring and (b) following the potential force majeure such that the delay and any adverse effects of the delay are minimized to the greatest extent possible. "Force majeure" does not include financial inability to complete the Work or a failure to achieve the Performance Standards.

35.     If any event occurs or has occurred that may delay the performance of any obligation under this CD for which Settling Defendant intends or may intend to assert a claim of force majeure, Settling Defendant shall notify EPA's Project Coordinator orally or, in his or her absence, EPA's Alternate Project Coordinator or, in the event both of EPA's designated

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

representatives are unavailable, the Director of the Superfund and Emergency Management Division, EPA Region 10, within 72 hours of when Settling Defendant first knew that the event might cause a delay. Within seven days thereafter, Settling Defendant shall provide in writing to EPA, the State, and the Tribes an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Settling Defendant's rationale for attributing such delay to a force majeure; and a statement as to whether, in the opinion of Settling Defendant, such event may cause or contribute to an endangerment to public health or welfare, or the environment. Settling Defendant shall include with any notice all available documentation supporting its claim that the delay was attributable to a force majeure. Settling Defendant shall be deemed to know of any circumstance of which Settling Defendant, any entity controlled by Settling Defendant, or Settling Defendant's contractors or subcontractors knew or should have known. Failure to comply with the above requirements regarding an event shall preclude Settling Defendant from asserting any claim of force majeure regarding that event, provided, however, that if EPA, despite the late or incomplete notice, is able to assess to its satisfaction whether the event is a force majeure under ¶ 34 and whether Settling Defendant have exercised its best efforts under ¶ 34, EPA may, in its unreviewable discretion, excuse in writing Settling Defendant's failure to submit timely or complete notices under this Paragraph.

36.     If EPA, after a reasonable opportunity for review and comment by the State and the Tribes, agrees that the delay or anticipated delay is attributable to a force majeure, the time for performance of the obligations under this CD that are affected by the force majeure will be extended by EPA, after a reasonable opportunity for review and comment by the State and the Tribes, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure shall not, of itself, extend the time for performance of any other obligation. If EPA, after a reasonable opportunity for review and comment by the State and the Tribes, does not agree that the delay or anticipated delay has been or will be caused by a force majeure, EPA will notify Settling Defendant in writing of its decision. If EPA, after a reasonable opportunity for review and comment by the State and the Tribes, agrees that the delay is attributable to a force majeure, EPA will notify Settling Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure.

37.     If Settling Defendant elects to invoke the dispute resolution procedures set forth in Section XIII (Dispute Resolution) regarding EPA's decision, it shall do so no later than 15 days after receipt of EPA's notice. In any such proceeding, Settling Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendant complied with the requirements of ¶ 34 and ¶ 35. If Settling Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Settling Defendant of the affected obligation of this CD identified to EPA and the Court.

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

38.     The failure by EPA to timely complete any obligation under the CD or under the SOW is not a violation of the CD, provided, however, that if such failure prevents Settling Defendant from meeting one or more deadlines in the SOW, Settling Defendant may seek relief under this Section.

## XIII.  DISPUTE RESOLUTION

39.     Unless otherwise expressly provided for in this CD, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes regarding this CD. However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of Settling Defendant that have not been disputed in accordance with this Section.

40.     A dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute. Any dispute regarding this CD shall in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations shall not exceed 20 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute.

41.     **Statements of Position**

a.     In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within 10 days after the conclusion of the informal negotiation period, Settling Defendant invokes the formal dispute resolution procedures of this Section by serving on the United States, the State, and the Tribes a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by Settling Defendant. The Statement of Position shall specify Settling Defendant's position as to whether formal dispute resolution should proceed under ¶ 42 (Record Review) or ¶ 43.

b.     Within 45 days after receipt of Settling Defendant's Statement of Position, EPA will serve on Settling Defendant its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA. EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under ¶ 42 (Record Review) or ¶ 43. Within 15 days after receipt of EPA's Statement of Position, Settling Defendant may submit a Reply.

c.     If there is a disagreement between Settling Defendant and EPA as to whether dispute resolution should proceed under ¶ 42 (Record Review) or ¶ 43, the parties to the dispute shall follow the procedures set forth in the Paragraph determined by EPA to be applicable. However, if Settling Defendant ultimately appeals to the Court to resolve the dispute, the Court shall determine which Paragraph is applicable in accordance with the standards of applicability set forth in ¶ 42 and ¶ 43.

42.     **Record Review**. Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

pursuant to the procedures set forth in this Paragraph. For purposes of this Paragraph, the adequacy of any response action includes, without limitation, the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this CD, and the adequacy of the performance of response actions taken pursuant to this CD. Settling Defendant shall not challenge, using the dispute resolution procedures under Section XIII, or judicially, EPA's remedial action selection embodied in the ROD.

a.      An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section. Upon request of a party, EPA may allow submission of supplemental statements of position by the parties to the dispute and afford the parties an opportunity to present their positions to the Director of the Superfund and Emergency Management Division, EPA Region 10.

b.      The Director of the Superfund and Emergency Management Division, EPA Region 10, will issue a final administrative decision resolving the dispute based on the administrative record described in ¶ 42.a. This decision shall be binding upon Settling Defendant, subject only to the right to seek judicial review pursuant to ¶ 42.c and ¶ 42.d.

c.      Any administrative decision made by EPA pursuant to ¶ 42.b shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by Settling Defendant with the Court and served on all Parties within 10 days after receipt of EPA's decision. The motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this CD. The United States may file a response to Settling Defendant's motion.

d.      In proceedings on any dispute governed by this Paragraph, Settling Defendant shall have the burden of demonstrating that the decision of the Superfund and Emergency Management Division Director is arbitrary and capricious or otherwise not in accordance with law. Judicial review of EPA's decision shall be on the administrative record compiled pursuant to ¶ 42.a.

43.     Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law, shall be governed by this Paragraph.

a.      The Director of the Superfund and Emergency Management Division, EPA Region 10, will issue a final decision resolving the dispute based on the statements of position and reply, if any, served under ¶ 41. The Superfund and Emergency Management Division Director's decision shall be binding on Settling Defendant unless, within 10 days after receipt of the decision, Settling Defendant files with the Court and serves on the parties a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the CD. The United States may file a response to Settling Defendant's motion.

b.      Notwithstanding ¶ N (CERCLA § 113(j) record review of ROD and Work) of Section I (Background), judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

44.      The invocation of formal dispute resolution procedures under this Section does not extend, postpone, or affect in any way any obligation of Settling Defendant under this CD, except as provided in ¶ 29 (Contesting Future Response Costs), as agreed by EPA, or as determined by the Court. Stipulated penalties with respect to the disputed matter shall continue to accrue, but payment shall be stayed pending resolution of the dispute, as provided in ¶ 52. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this CD. In the event that Settling Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XIV (Stipulated Penalties).

## XIV.  STIPULATED PENALTIES

45.      Settling Defendant shall be liable to the United States for stipulated penalties in the amounts set forth in ¶¶ 46.a and 47, for failure to comply with the obligations specified in ¶¶ 46.b and 47, unless excused under Section XII (Force Majeure). "Comply" as used in the previous sentence includes compliance by Settling Defendant with all applicable requirements of this CD, within the deadlines established under this CD and the SOW. If an initially submitted or resubmitted deliverable contains a material defect, and the deliverable is disapproved or modified by EPA under ¶ 6.6 (a) (Initial Submissions) or 6.6 (b) (Resubmissions) of the SOW due to such material defect, then the material defect shall constitute a lack of compliance for purposes of this Paragraph.

46.      **Stipulated Penalty Amounts - Payments, Financial Assurance, Major Deliverables, and Other Milestones**

a.      The following stipulated penalties shall accrue per violation per day for any noncompliance with the obligations identified in ¶ 46.b:

| Period of Noncompliance | Penalty Per Violation Per Day |
|---|---|
| 1st through 14th day | $ 5,000 |
| 15th through 30th day | $ 7,500 |
| 31st day and beyond | $ 10,000 |

b.      **Obligations**

(1)      Payment of any amount due under Section X (Payments for Response Costs).

(2)      Establishment and maintenance of financial assurance in accordance with Section IX (Financial Assurance).

(3)      Prohibition on submission of mining application for mining outside areas previously disturbed by mining under ¶ 8.c.

(4)     Establishment of an escrow account to hold any disputed Future Response Costs under ¶ 29 (Contesting Future Response Costs).

(5)     Submission of Remedial Design Work Plan under ¶ 3.1 of the SOW.

(6)     Submission of Preliminary 30% Remedial Design under ¶ 3.5 of the SOW.

(7)     Submission of Pre-Final 90% Remedial Design under ¶ 3.6 of the SOW, and for each successive phase of remedial design.

(8)     Submission of Final 100% Remedial Design under ¶ 3.7 of the SOW, and for each successive phase of remedial design.

(9)     Submission of Remedial Action Work Plan under ¶ 4.1 of the SOW, and as updated for each successive phase of remedial action.

(10)    Submission of Annual Construction Reports under ¶ 4.3(d) of the SOW.

(11)    Submission of Remedial Action Construction Completion Report under ¶ 4.6 of the SOW.

(12)    Submission of Remedial Action Monitoring Report under ¶ 4.7(a) of the SOW.

(13)    Submission of Periodic Review Support Plan under ¶ 4.8 of the SOW.

(14)    Submission of Work Completion Report under ¶ 4.9(b) of the SOW.

47.     **Stipulated Penalty Amounts – Other Deliverables**. The following stipulated penalties shall accrue per violation per day for failure to submit timely or adequate deliverables pursuant to the CD other than those specified in ¶ 46.b:

| Period of Noncompliance | Penalty Per Violation Per Day |
| --- | --- |
| 1st through 14th day | $ 2,500 |
| 15th through 30th day | $ 5,000 |
| 31st day and beyond | $ 7,500 |

48.     In the event that EPA assumes performance of a portion or all of the Work pursuant to ¶ 61 (Work Takeover), Settling Defendant shall be liable for a stipulated penalty in the amount of $2,000,000. Stipulated penalties under this Paragraph are in addition to the remedies available under ¶ 24 (Access to Financial Assurance) and ¶ 61 (Work Takeover).

49.     All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity. However, stipulated penalties

shall not accrue: (a) with respect to a deficient submission under ¶ 6.6 (Approval of Deliverables) of the SOW, during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Settling Defendant of any deficiency; (b) with respect to a decision by the Director of the Superfund and Emergency Management Division, EPA Region 10, under ¶ 42.b or ¶ 43.a of Section XIII (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that Settling Defendant's reply to EPA's Statement of Position is received until the date that issues a final decision regarding such dispute; or (c) with respect to judicial review by this Court of any dispute under Section XIII (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute. Nothing in this CD shall prevent the simultaneous accrual of separate penalties for separate violations of this CD.

50.    Following EPA's determination that Settling Defendant has failed to comply with a requirement of this CD, EPA may give Settling Defendant written notification of the same and describe the noncompliance. EPA may send Settling Defendant a written demand for payment of the penalties. However, penalties shall accrue as provided in the preceding Paragraph regardless of whether EPA has notified Settling Defendant of a violation.

51.    All penalties accruing under this Section shall be due and payable to the United States within 30 days after Settling Defendant's receipt from EPA of a demand for payment of the penalties, unless Settling Defendant invokes the Dispute Resolution procedures under Section XIII (Dispute Resolution) within the 30-day period. All payments to the United States under this Section shall be made at https://www.pay.gov using the link for "EPA Miscellaneous Payments Cincinnati Finance Center," including references to the Site/Spill ID number, the DJ number, and the purpose of the payment. SDs shall send to DOJ and EPA, in accordance with ¶ 83, a notice of this payment including these references.

52.    Penalties shall continue to accrue as provided in ¶ 51 during any dispute resolution period, but need not be paid until the following:

a.    If the dispute is resolved by agreement of the parties or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owed shall be paid to EPA within 15 days after the agreement or the receipt of EPA's decision or order;

b.    If the dispute is appealed to this Court and the United States prevails in whole or in part, Settling Defendant shall pay all accrued penalties determined by the Court to be owed to EPA within 60 days after receipt of the Court's decision or order, except as provided in ¶ 52.c;

c.    If the District Court's decision is appealed by any Party, Settling Defendant shall pay all accrued penalties determined by the District Court to be owed to the United States into an interest-bearing escrow account, established at a duly chartered bank or trust company that is insured by the FDIC, within 60 days after receipt of the Court's decision or order. Penalties shall be paid into this account as they continue to accrue, at least every 60 days. Within 15 days after receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA or to Settling Defendant to the extent that they prevail.

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

53.    If Settling Defendant fails to pay stipulated penalties when due, Settling Defendant shall pay Interest on the unpaid stipulated penalties as follows: (a) if Settling Defendant has timely invoked dispute resolution such that the obligation to pay stipulated penalties has been stayed pending the outcome of dispute resolution, Interest shall accrue from the date stipulated penalties are due pursuant to ¶ 52 until the date of payment; and (b) if Settling Defendant fails to timely invoke dispute resolution, Interest shall accrue from the date of demand under ¶ 51 until the date of payment. If Settling Defendant fails to pay stipulated penalties and Interest when due, the United States may institute proceedings to collect the penalties and Interest.

54.    The payment of penalties and Interest, if any, shall not alter in any way Settling Defendant's obligation to complete the performance of the Work required under this CD.

55.    Nothing in this CD shall be construed as prohibiting, altering, or in any way limiting the ability of the United States or the State to seek any other remedies or sanctions available by virtue of Settling Defendant's violation of this CD or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(*l*) of CERCLA, 42 U.S.C. § 9622(*l*), provided, however, that the United States shall not seek civil penalties pursuant to Section 122(*l*) of CERCLA for any violation for which a stipulated penalty is provided in this CD, except in the case of a willful violation of this CD.

56.    Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this CD.

## XV.   COVENANTS BY PLAINTIFFS

57.    **Covenants for Settling Defendant by United States**. Except as provided in ¶ 58 (General Reservations of Rights), the United States covenants not to sue or to take administrative action against Settling Defendant pursuant to Sections 106 and 107(a) of CERCLA, for the Work, Past Response Costs, and Future Response Costs. These covenants shall take effect upon the Effective Date. These covenants are conditioned upon the satisfactory performance by Settling Defendant of its obligations under this CD. These covenants extend only to Settling Defendant and do not extend to any other person.

58.    **General Reservations of Rights**. The United States, the State, and the Tribes reserve, and this CD is without prejudice to, all rights against Settling Defendant with respect to all matters not expressly included within Plaintiffs' covenants. Notwithstanding any other provision of this CD, the United States, the State, and the Tribes reserve all rights against Settling Defendant with respect to:

a.    liability for failure by Settling Defendant to meet a requirement of this CD;

b.    liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

29

c.      liability based on the ownership of the Site by Settling Defendant when such ownership commences after signature of this CD by Settling Defendant;

d.       liability based on the operation of the Site by Settling Defendant when such operation commences after signature of this CD by Settling Defendant and does not arise solely from Settling Defendant's performance of the Work;

e.      liability based on Settling Defendant's transportation, treatment, storage, or disposal, or arrangement for transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the ROD, the Work, or otherwise ordered by EPA, after signature of this CD by Settling Defendant;

f.      liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

g.      criminal liability;

h.      liability for violations of federal or state law that occur during or after implementation of the Work;

i.      liability, prior to achievement of Performance Standards, for additional response actions that EPA determines are necessary to achieve and maintain Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the ROD, but that cannot be required pursuant to ¶ 13 (Modification of SOW or Related Deliverables);

j.      liability for additional operable units at the Site or the final response action; and

k.      liability for costs that the United States, the State, or the Tribes will incur regarding the Site but that are not within the definition of Future Response Costs, State Future Response Costs, or Tribal Future Response Costs.

59.      **Covenants for Settling Defendant by the State**. Except as provided in ¶ 58 (General Reservations of Rights), the State of Idaho covenants not to sue or to take administrative action against Settling Defendant pursuant to Section 107(a) of CERCLA or state law, for the Work and State Future Response Costs. These covenants shall take effect upon the Effective Date. These covenants are conditioned upon the satisfactory performance by Settling Defendant of its obligations under this CD. These covenants extend only to Settling Defendant and do not extend to any other person.

60.      **Covenants for Settling Defendant by the Tribes.**  Except as provided in ¶ 58 (General Reservations of Rights), the Tribes covenant not to sue or to take administrative action against Settling Defendant pursuant to Section 107(a) of CERCLA or tribal law, for the Work, Tribal Past Response Costs, and Tribal Future Response Costs.  These covenants shall take effect upon the Effective Date.  These covenants are conditioned upon the satisfactory performance by Settling Defendant of its obligations under this CD. These covenants extend only to Settling Defendant and do not extend to any other person.

61.      **Work Takeover**

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

a.      In the event EPA determines that Settling Defendant: (1) has ceased implementation of any portion of the Work; (2) is seriously or repeatedly deficient or late in its performance of the Work; or (3) is implementing the Work in a manner that may cause an endangerment to human health or the environment, EPA may issue a written notice ("Work Takeover Notice") to Settling Defendant. Any Work Takeover Notice issued by EPA will specify the grounds upon which such notice was issued and will provide Settling Defendant a period of 10 days within which to remedy the circumstances giving rise to EPA's issuance of such notice.

b.      If, after expiration of the 10-day notice period specified in ¶ 61.a, Settling Defendant has not remedied to EPA's satisfaction the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, EPA may at any time thereafter assume the performance of all or any portion(s) of the Work as EPA deems necessary ("Work Takeover"). EPA will notify Settling Defendant in writing (which writing may be electronic) if EPA determines that implementation of a Work Takeover is warranted under this ¶ 61.b. Funding of Work Takeover costs is addressed under ¶ 24 (Access to Financial Assurance).

c.      Settling Defendant may invoke the procedures set forth in ¶ 42 (Record Review), to dispute EPA's implementation of a Work Takeover under ¶ 61.b. However, notwithstanding Settling Defendant's invocation of such dispute resolution procedures, and during the pendency of any such dispute, EPA may in its sole discretion commence and continue a Work Takeover under ¶ 61.b until the earlier of (1) the date that Settling Defendant remedies, to EPA's satisfaction, the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, or (2) the date that a final decision is rendered in accordance with ¶ 42 (Record Review) requiring EPA to terminate such Work Takeover.

62.      Notwithstanding any other provision of this CD, the United States, the State and the Tribes retain all authority and reserve all rights to take any and all response actions authorized by law.

## XVI.  COVENANTS BY SETTLING DEFENDANT

63.      **Covenants by Settling Defendant**. Subject to the reservations in ¶ 65, Settling Defendant covenants not to sue and agrees not to assert any claims or causes of action against the United States, the State, or the Tribes with respect to the Work, past response actions regarding the Site, Past Response Costs, Future Response Costs, State Future Response Costs, Tribal Past Response Costs, Tribal Future Response Costs, and this CD, including, but not limited to:

a.      any direct or indirect claim for reimbursement from the EPA Hazardous Substance Superfund through CERCLA §§ 106(b)(2), 107, 111, 112 or 113, or any other provision of law;

b.      any claims under CERCLA §§ 107 or 113, RCRA Section 7002(a), 42 U.S.C. § 6972(a), or state law regarding the Work, past response actions regarding the Site, Past Response Costs, Future Response Costs, State Future Response Costs, Tribal Past Response Costs, Tribal Future Response Costs, and this CD; or

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

c.      any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Idaho Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, or at common law.

64.      Except as provided in ¶¶ 67 (Waiver of Claims by Settling Defendant) and 74 (Res Judicata and Other Defenses), the covenants in this Section shall not apply if the United States, the State, or the Tribes bring a cause of action or issue an order pursuant to any of the reservations in Section XV (Covenants by Plaintiffs), other than in ¶¶ 58.a (claims for failure to meet a requirement of the CD), 58.g (criminal liability), and 58.h (violations of federal/state law during or after implementation of the Work), but only to the extent that Settling Defendant's claims arise from the same response action, response costs, or damages that the United States, the State, or the Tribes are seeking pursuant to the applicable reservation.

65.      Settling Defendant reserves, and this CD is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, and brought pursuant to any statute other than CERCLA or RCRA and for which the waiver of sovereign immunity is found in a statute other than CERCLA or RCRA, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States, as that term is defined in 28 U.S.C. § 2671, while acting within the scope of his or her office or employment under circumstances where the United States, if a private person, would be liable in accordance with the law of the place where the act or omission occurred. However, the foregoing shall not include any claim based on EPA's selection of response actions, or the oversight or approval of Settling Defendant's deliverables or activities.

66.      Nothing in this CD shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

67.      **Waiver of Claims by Settling Defendant**

a.      Settling Defendant agrees not to assert any claims and to waive all claims or causes of action (including but not limited to claims or causes of action under Sections 107(a) and 113 of CERCLA) that it may have for all matters relating to the Site against any person where the person's liability to Settling Defendant with respect to the Site is based solely on having arranged for disposal or treatment, or for transport for disposal or treatment, of hazardous substances at the Site, or having accepted for transport for disposal or treatment of hazardous substances at the Site, if all or part of the disposal, treatment, or transport occurred before April 1, 2001, and the total amount of material containing hazardous substances contributed by such person to the Site was less than 110 gallons of liquid materials or 200 pounds of solid materials.

b.      **Exceptions to Waiver.**  The waiver under this ¶ 67 shall not apply with respect to any defense, claim, or cause of action that Settling Defendant may have against any person otherwise covered by such waiver if such person asserts a claim or cause of action relating to the Site against Settling Defendant.

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

68.     Settling Defendant agrees not to seek judicial review of the final rule listing the Site on the NPL based on a claim that changed site conditions that resulted from the performance of the Work in any way affected the basis for listing the Site.

## XVII. EFFECT OF SETTLEMENT; CONTRIBUTION

69.     Except as provided in ¶ 67 (Waiver of Claims by Settling Defendant), Nothing in this CD shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this CD. Except as provided in Section XVI (Covenants by Settling Defendant), each of the Parties expressly reserves any and all rights (including, but not limited to, pursuant to Section 113 of CERCLA, 42 U.S.C. § 9613), defenses, claims, demands, and causes of action that each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto. Nothing in this CD diminishes the right of the United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any such persons to obtain additional response costs or response action and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

70.     The Parties agree, and by entering this CD this Court finds, that this CD constitutes a judicially approved settlement pursuant to which Settling Defendant has, as of the Effective Date, resolved liability to the United States within the meaning of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by law, for the "matters addressed" in this CD. The "matters addressed" in this CD are the Work, Past Response Costs, Future Response Costs, State Future Response Costs, Tribal Past Response Costs, and Tribal Future Response Costs.

71.     The Parties further agree, and by entering this CD this Court finds, that the complaint filed by the United States and the State in this action is a civil action within the meaning of Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), and that this CD constitutes a judicially approved settlement pursuant to which Settling Defendant has, as of the Effective Date, resolved liability to the United States and the State within the meaning of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B).

72.     Settling Defendant shall, with respect to any suit or claim brought by it for matters related to this CD, notify the United States, the State, and the Tribes in writing no later than 60 days prior to the initiation of such suit or claim.

73.     Settling Defendant shall, with respect to any suit or claim brought against it for matters related to this CD, notify in writing the United States, the State, and the Tribes within 10 days after service of the complaint on such SD. In addition, Settling Defendant shall notify the United States, the State, and the Tribes within 10 days after service or receipt of any Motion for Summary Judgment and within 10 days after receipt of any order from a court setting a case for trial.

74.     **Res Judicata and Other Defenses**. In any subsequent administrative or judicial proceeding initiated by the United States, the State, or the Tribes for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendant shall not assert,

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States, the State, or the Tribes in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XV (Covenants by Plaintiffs).

# XVIII.       ACCESS TO INFORMATION

75.     Settling Defendant shall provide to EPA, the State, and the Tribes, upon request, copies of all records, reports, documents, and other information (including records, reports, documents, and other information in electronic form) (hereinafter referred to as "Records") within Settling Defendant's possession or control or that of their contractors or agents relating to activities at the Site or to the implementation of this CD, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information regarding the Work. Settling Defendant shall also make available to EPA, the State, and the Tribes, for purposes of investigation, information gathering, or testimony, their employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

76.     **Privileged and Protected Claims**

a.     Settling Defendant may assert that all or part of a Record requested by a Plaintiff is privileged or protected as provided under federal law, in lieu of providing the Record, provided Settling Defendant complies with ¶ 76.b, and except as provided in ¶ 76.c.

b.     If Settling Defendant asserts a claim of privilege or protection, it shall provide Plaintiffs with the following information regarding such Record: its title; its date; the name, title, affiliation (e.g., company or firm), and address of the author, of each addressee, and of each recipient; a description of the Record's contents sufficient to assess the Settling Defendant's claim of privilege or protection without revealing privileged or protected information; and the privilege or protection asserted. If a claim of privilege or protection applies only to a portion of a Record, Settling Defendant shall provide the Record to Plaintiffs in redacted form to mask the privileged or protected portion only. Settling Defendant shall retain all Records that it claims to be privileged or protected until Plaintiffs have had a reasonable opportunity to dispute the privilege or protection claim and any such dispute has been resolved in the Settling Defendant's favor.

c.     Settling Defendant may make no claim of privilege or protection regarding: (1) any data regarding the Site, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, radiological or engineering data, or the portion of any other Record that evidences conditions at or around the Site; or (2) the portion of any Record that Settling Defendant is required to create or generate pursuant to this CD.

77.     **Business Confidential Claims**. Settling Defendant may assert that all or part of a Record provided to Plaintiffs under this Section or Section XIX (Retention of Records) is business confidential to the extent permitted by and in accordance with Section 104(e)(7) of

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

CERCLA, 42 U.S.C. § 9604(e)(7) and 40 C.F.R. § 2.203(b). Settling Defendant shall segregate and clearly identify all Records or parts thereof submitted under this CD for which Settling Defendant asserts business confidentiality claims. Records that Settling Defendant claims to be confidential business information will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B by EPA. If no claim of confidentiality accompanies Records when they are submitted to EPA and the State, or if EPA has notified Settling Defendant that the Records are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, the public may be given access to such Records without further notice to Settling Defendant.

78.     If relevant to the proceeding, the Parties agree that validated sampling or monitoring data generated in accordance with the SOW and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this CD.

79.     Notwithstanding any provision of this CD, Plaintiffs retain all of their information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

## XIX.  RETENTION OF RECORDS

80.     Until 10 years after EPA's Certification of Work Completion under ¶ 4.9 (Certification of Work Completion) of the SOW, Settling Defendant shall preserve and retain all non-identical copies of Records (including Records in electronic form) now in its possession or control or that come into its possession or control that relate in any manner to its liability under CERCLA with respect to the Site, provided, however, that Settling Defendant must retain, in addition, all Records that relate to the liability of any other person under CERCLA with respect to the Site. Settling Defendant must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above all non-identical copies of the last draft or final version of any Records (including Records in electronic form) now in its possession or control or that come into its possession or control that relate in any manner to the performance of the Work, provided, however, Settling Defendant (and its contractors and agents) must retain, in addition, copies of all data generated during the performance of the Work and not contained in the aforementioned Records required to be retained. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

81.     At the conclusion of this record retention period, Settling Defendant shall notify the United States, the State, and the Tribes at least 90 days prior to the destruction of any such Records, and, upon request by the United States, the State, or the Tribes, and except as provided in ¶ 76 (Privileged and Protected Claims), Settling Defendant shall deliver any such Records to EPA, the State, or the Tribes, as the case may be.

82.     Settling Defendant certifies that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed, or otherwise disposed of any Records (other than identical copies) relating to its potential liability regarding the Site since notification of potential liability by the United States or the State and that it has fully complied with any and all EPA, State, and Tribal requests for information regarding the Site pursuant to Sections 104(e) and 122(e)(3)(B) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e)(3)(B), and Section 3007 of RCRA, 42 U.S.C. § 6927, and state law.

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

## XX.   NOTICES AND SUBMISSIONS

83.     All approvals, consents, deliverables, modifications, notices, notifications, objections, proposals, reports, and requests specified in this CD must be in writing unless otherwise specified. Whenever, under this CD, notice is required to be given, or a report or other document is required to be sent, by one Party to another, it must be directed to the person(s) specified below at the addresses specified below. Any Party may change the person and/or address applicable to it by providing notice of such change to all Parties. All notices under this Section are effective upon receipt, unless otherwise specified. Notices required to be sent to EPA, and not to the United States, should not be sent to the DOJ. Except as otherwise provided, notice to a Party by email (if that option is provided below) or by regular mail in accordance with this Section satisfies any notice requirement of the CD regarding such Party.

| | |
|---|---|
| **As to the United States**: | EES Case Management Unit<br>U.S. Department of Justice<br>Environment and Natural Resources Division<br>P.O. Box 7611<br>Washington, D.C. 20044-7611<br>eescdcopy.enrd@usdoj.gov<br>Re: DJ # 90-11-2-07884/7 |
| **As to EPA**: | Calvin J. Terada<br>Director, Superfund and Emergency Management Division<br>U.S. Environmental Protection Agency<br>Region 10<br>1200 6th Avenue, Suite 155, 12-D12-1<br>Seattle, WA 98101-3140<br>Terada.Calvin@epa.gov |
| **and**: | Linda Meyer<br>Remedial Project Coordinator<br>U.S. Environmental Protection Agency<br>Region 10<br>1200 6th Avenue, Suite 155, 12-D12-1<br>Seattle, WA 98101-3140<br>Meyer.Linda@epa.gov |
| **As to EPA Cincinnati Finance Center**: | EPA Cincinnati Finance Center<br>26 W. Martin Luther King Drive<br>Cincinnati, Ohio 45268<br>cinwd_acctsreceivable@epa.gov |

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

**As to the State**:     Michael Rowe
State Project Coordinator
Idaho Department of Environmental Quality
444 Hospital Way, Suite 300
Pocatello, ID  83201
Michael.rowe@deq.idaho.gov

**As to the Tribes**:     Kelly Wright
Tribes Project Coordinator
Shoshone Bannock Tribes of Fort Hall
P. O. Box 306
Fort Hall, Idaho
(208) 478-3700
kwright@sbtribes.com

**As to Settling Defendant**:   Chris Leatherman
Settling Defendant's Project Coordinator
P4 Production L.L.C.
1853 Highway 34
PO Box 816
Soda Springs, Idaho 83276
chris.leatherman@bayer.com
(208) 547-1435

**with copy to:**

Mary M. Shaffer
Head of HSE & Real Estate Law for Crop Science
Bayer U.S. – Crop Science
800 North Lindbergh Blvd (E2NK)
St. Louis, Missouri 63167
molly.shaffer@bayer.com
(314) 694-3883

## XXI.   RETENTION OF JURISDICTION

84.  This Court retains jurisdiction over both the subject matter of this CD and Settling Defendant for the duration of the performance of the terms and provisions of this CD for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or modification of this CD, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XIII (Dispute Resolution).

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

## XXII. APPENDICES

85.     The following appendices are attached to and incorporated into this CD:

"Appendix A" is the ROD.

"Appendix B" is the SOW.

"Appendix C" is a map showing and generally describing the location of the Site.

## XXIII.      MODIFICATION

86.     Except as provided in ¶ 13 (Modification of SOW or Related Deliverables), material modifications to this CD, including the SOW, shall be in writing, signed by the United States and Settling Defendant, and shall be effective upon approval by the Court. Except as provided in ¶ 13, non-material modifications to this CD, including the SOW, shall be in writing and shall be effective when signed by duly authorized representatives of the United States and Settling Defendant. All modifications to the CD, other than the SOW, also shall be signed by the State, or a duly authorized representative of the State, and by the Tribes, or a duly authorized representative of the Tribes, as appropriate. A modification to the SOW shall be considered material if it implements a ROD amendment that fundamentally alters the basic features of the selected remedy within the meaning of 40 C.F.R. § 300.435(c)(2)(ii). Before providing its approval to any modification to the SOW, the United States will provide the State and the Tribes with a reasonable opportunity to review and comment on the proposed modification.

87.     Nothing in this CD shall be deemed to alter the Court's power to enforce, supervise, or approve modifications to this CD.

## XXIV.      LODGING AND PUBLIC COMMENT

88.     This CD shall be lodged with the Court for at least 30 days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the CD disclose facts or considerations that indicate that the CD is inappropriate, improper, or inadequate. Settling Defendant consents to the entry of this CD without further notice.

89.     If for any reason the Court should decline to approve this CD in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXV. SIGNATORIES/SERVICE

90.     The undersigned representative of Settling Defendant and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice, and the Director for the Idaho Department of Environmental Quality, and the Chairman of the Fort Hall Business Council for the Shoshone-Bannock Tribes, certify that they are fully authorized to

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

enter into the terms and conditions of this CD and to execute and legally bind such Party to this document.

91.     Settling Defendant agrees not to oppose entry of this CD by this Court or to challenge any provision of this CD unless the United States has notified Settling Defendant in writing that it no longer supports entry of the CD.

92.     Settling Defendant shall identify, on the attached signature page, the name, address, and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this CD. Settling Defendant agrees to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons. Settling Defendant need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this CD.

## XXVI.     FINAL JUDGMENT

93.     This CD and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties regarding the settlement embodied in the CD. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this CD.

94.     Upon entry of this CD by the Court, this CD shall constitute a final judgment between and among the United States, the State, the Tribes, and Settling Defendant. The Court enters this judgment as a final judgment under Federal Rules of Civil Procedure 54 and 58.

SO ORDERED

DATED: May 21, 2021

B. Lynn Winmill
U.S. District Court Judge

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

**FOR THE UNITED STATES OF AMERICA:**


JEAN E. WILLIAMS
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20044



 /s/ Katherine L. Matthews
KATHERINE L. MATTHEWS
Senior Counsel
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
999 18th St., Suite 370
Denver, CO 80202
Telephone: (303) 844-1365
Katherine.Matthews@usdoj.gov

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

CALVIN
TERADA

Digitally signed by
CALVIN TERADA
Date: 2021.01.15 09:16:46
-08'00'

1/15/2021
Date

CALVIN TERADA
Director, Superfund and Emergency Management Division
U.S. Environmental Protection Agency, Region 10
1200 6th Avenue, Suite 155
Seattle, Washington  98101

NICHOLAS
VIDARGAS

Digitally signed by
NICHOLAS VIDARGAS
Date: 2021.01.15 09:29:31
-08'00'

1/15/2021
Date

NICK VIDARGAS
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 10
1200 6th Avenue, Suite 155
Seattle, Washington  98101

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

**FOR THE STATE OF IDAHO**:

1/11/21
Date

JESS BYRNE
Director
Idaho Department of Environmental Quality

**FOR THE SHOSHONE-BANNOCK TRIBES:**

01/15/21
Date

DEVON BOYER
Chairman, Fort Hall Business Council

United States, et al. v. P4 Production, L.L.C.
RD/RA Consent Decree

**FOR P4 PRODUCTION, L.L.C.:**

1/5/2021
Date

Roger W. Gibson
President
P4 Production, L.L.C.
Highway 34 North
Soda Springs, Idaho 83276

Agent Authorized to Accept Service Name (print): Mary M. Shaffer
on Behalf of Above-signed Party:

| | |
|---|---|
| Title: | Head of HSE & Real Estate Law for Crop Science |
| Company: | Bayer U.S. – Crop Science |
| Address: | 800 North Lindbergh Blvd (E2NK) St. Louis, Missouri 63167 |
| Phone: | (314) 694-3883 |
| Email: | molly.shaffer@bayer.com |